THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES S. WILSON, III, Defendant-Appellant.

(No. 74-90;

Second District (2nd Division)—September 24, 1975.

Alex Rafferty, of Finn, Geiger & Rafferty, of Waukegan, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant, an attorney, appeals his conviction for contempt of court and sentence of 12 hours in the county jail on the following grounds:

(1) that he was not guilty of contempt because he was physically and emotionally unable to comply with the court's order to proceed to trial;

(2) that he cannot be incarcerated for contempt because the written order finding him in contempt did not specify the period of confinement;

(3) that the finding of direct contempt is not valid because it was not brought in the name of the People of the State of Illinois.

The defendant is an experienced trial attorney. At the time of the order holding him to be in contempt of court the circuit court was operating under handicaps because of a shortage of judges.

On the morning in question (October 25) when the case of *People v. Wypych*, in which case defendant was attorney of record, was called, the transcript reveals a long statement before the bench by Mr. Wilson, complaining about the delay in starting cases until after 10:30 or 11 a.m., and stating, among other things, "if this Court can assign me to another judge, commencing immediately, I will be glad to go to trial." Later, in the same statement, the defendant said, "It is going on 10:30. If we

could put it over until—I am advising the Court that at this time I shall not commence this trial after 10:30 this morning." The judge responded that, "Well, I am holding it." Mr. Wilson then left and did not appear until 11 a.m. (the case having been called at 10:45 a.m.). When he appeared the defendant objected to going to trial so late in the day, somewhat after 11 a.m. The judge called the case for trial and ordered the defendant to proceed, whereupon the defendant informed the court he was unable to proceed with trial. The defendant stated that he was "just not ready" and when the court inquired why he was not ready, the defendant repeated, "I am just not ready." When asked if he was refusing to participate in the trial the defendant replied, "I am unable to participate." When asked, "For what reason?", the defendant said he felt his client was being denied his rights under due process, "It builds up interminable delays."

After all of this colloquy, the defendant stated that he was unable "physically, mentally and emotionally" to proceed. The court at this time denied the defendant's request to delay the trial and when defendant persisted in his refusal to participate, issued an order holding defendant guilty of direct contempt of court. The defendant requested 30 days to obtain an attorney and "have a hearing." The judge set the matter for November 23 and remarked that he would give the defendant time before setting the penalty. On December 5, at a hearing at which defendant and his attorney appeared, the court issued its order sentencing the defendant to 12 hours' incarceration in the county jail.

■■ It is clear from the colloquy between the court and the defendant at the time this contempt was committed, that the defendant's claim that he was physically and emotionally "unable" to comply with the judge's order to proceed with the trial was an afterthought—a justification in retrospect for conduct which actually was the result of annoyance and frustration rather than actual illness. No doubt the situation caused by a shortage of judges was extremely aggravating to the defendant as a trial lawyer but he did not put his refusal to continue at the time on the ground of illness, but rather replied to the judge's question as to his reasons for refusing to continue by invoking due process and the violation thereof by interminable delays arising from general conditions in the circuit court. We cannot, therefore, accept the claim of illness at its face value when it is asserted long afterwards. That illness is a legitimate excuse for a continuance is clear from section 114—4(b)(1) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(b)(1)). The granting of such continuance, however, is within the sound discretion of the trial court and the circumstances related above do not indicate

any abuse of that discretion since the remarks of counsel indicate his refusal to continue was based on something other than actual illness. This contention, therefore, must be resolved against the defendant.

■■ The second contention of the defendant—that he cannot be incarcerated when the written order finding him in contempt did not specify a period of incarceration—does not appear to be based on legal precedent. The case cited by the defendant in support of this proposition, *People v. Tomashevsky*, 41 Ill.2d 559, is not relevant in either its fact or its issues and must be disregarded in considering the question before us. By its order the judge set out clearly the basis for his finding of contempt and continued the matter from that date (October 25, 1973) to November 23, 1973, remarking to the defendant he would continue the case for assessment of penalty. The defendant asked for a 30-day continuance before sentence was pronounced and also requested that the persons in court at the time give their names and addresses as witnesses. It is obvious that the delay in pronouncing sentence was for the defendant's benefit. The defendant cannot logically argue on this appeal that a delay in pronouncing sentence which he agreed to and wished to prolong beyond the date set by the court, in any way impairs the validity of the court's finding that a direct contempt was committed. We think this contention is without merit. In *People v. Baxter*, 130 Ill.App.2d 1111, it was held that a contempt order may include matters by reference, which are to be considered a part of the order on review. We see no basis for the defendant's contention in this regard and find no prejudice was done him by the delay in sentencing.

■■ Lastly, the defendant contends that a proceeding based on a direct contempt must be brought in the name of the People of the State of Illinois, whereas the present case was styled in the court's order "In the Matter of Charles S. Wilson, III, Contemnor." While it is customary and appropriate to style such cases in the name of the People we do not believe an order finding the defendant in contempt which is based on facts recited in the contempt order is void because the order is styled in the name of the contemnor instead of the People. We note that in the case of *In re Dunagan*, 80 Ill.App.2d 117, the case was disposed of on its merits without reference to the point raised by the defendant here. Neither, apparently, was it raised in the Supreme Court case of *In re McConnell*, 370 U.S. 230, 8 L.Ed.2d 434, 82 S.Ct. 1288. It is a very technical issue not related to the merits of the case. The purpose of the court's contempt power is to safeguard the administration of justice by protecting the dignity and power of the court. The point raised by the defendant here does not seem to approach these issues and may be disregarded for purposes of deciding this appeal.

We hold, therefore, that the defendant was guilty of a direct contempt in refusing to proceed to trial as ordered by the trial court without giving sufficient excuse for such refusal. To that extent we affirm the judgment of the trial court.

■■ We feel, however, that no useful purpose will be served at this late date by confining the defendant in the county jail for the prescribed period of 12 hours. The defendant has already been punished sufficiently by the time, trouble and expense he has been put to in defending an appeal in his contempt conviction. Accordingly, we hereby vacate that part of the judgment providing for incarceration in the county jail. As so modified, the judgment of the circuit court is affirmed.

Judgment affirmed; sentence vacated.

T. MORAN and DIXON, JJ., concur.