392 So.2d 40 (1980)
Rosa V. ORTEGA, As Personal Representative of the Estate of Evelio Ortega (Grillo), Deceased, Appellant,
v.
GENERAL MOTORS CORPORATION, a Foreign Corporation Doing Business in the State of Florida, Appellee.
No. 79-2267.
District Court of Appeal of Florida, Fourth District.
December 24, 1980.
Rehearing Denied January 22, 1981.
*41 Richard A. Kupfer of Cone, Owen, Wagner, Nugent, Johnson, Hazouri & Roth, West Palm Beach, for appellant.
Marjorie D. Gadarian of Jones & Foster, West Palm Beach, for appellee.
WETHERINGTON, GERALD T., Associate Judge.
Rosa V. Ortega appeals an order granting summary judgment against her on her claim that appellee, General Motors Corporation (GMC) was vicariously liable for the alleged negligence of appellee, South Bay Equipment Co. (South Bay) which allegedly caused the death of her husband, Evelio Ortega Grillo. Her claim of vicarious liability was based upon the theories that South Bay was either the real or apparent agent of GMC. An examination of the undisputed facts of record and the applicable legal principles on the subject requires affirmance of the summary judgment entered by the trial court.
On July 2, 1973, while Evelio Ortega Grillo was operating his employer's new 1973 GMC dump truck filled with a load of wet sand, a right rear tire of the truck blew out, causing the truck to go out of control and turn over. Evelio Ortega Grillo suffered fatal injuries from the accident. His wife, Rosa V. Ortega, was appointed administratrix of his estate.
Appellant, as Administratrix of the Estate of Evelio Ortega Grillo, sued South Bay, the retail dealer who sold the truck to her husband's employer, and GMC, the manufacturer of the truck, for wrongful death. Theories of negligence, breach of implied and express warranty, and strict liability were alleged against both defendants. In addition to alleging that GMC was itself negligent, appellant alleged that GMC was vicariously liable for negligence committed by South Bay.
Appellant's vicarious liability theory against GMC was contained in her third amended complaint, in which she alleged that South Bay was GMC's "dealer/agent with actual, implied or apparent authority in its business of selling trucks." GMC did not specifically deny this allegation in its answer to the third amended complaint.
Subsequently, appellant and South Bay entered into a pre-trial settlement and the action was dismissed against South Bay. Appellant also executed a release in favor of South Bay. The case continued against GMC on appellant's allegations that GMC was directly liable for its own tortious conduct and vicariously liable for the negligence of South Bay because South Bay was its real or apparent agent. Both parties moved for summary judgment on the agency issue. The trial court granted GMC's *42 motion for summary judgment, holding that South Bay was not the real or apparent agent of GMC as a matter of law. The remaining claims against GMC were tried before a jury. The jury returned a verdict in favor of GMC on all counts and the court entered final judgment in its favor. Appellant then filed this appeal.
Appellant's first point on appeal is that she was entitled to a summary judgment on the agency issue because GMC failed to deny the allegations of the agency contained in the third amended complaint. The record shows, however, that she did not raise this contention in the trial court. Instead, she submitted the agency issue to the trial court for a determination on the merits on motion for summary judgment. Accordingly, appellant cannot raise the issue of GMC's failure to deny her allegations of agency for the first time on appeal. Cosid v. Bay Steel Products Co., 288 So.2d 277 (Fla. 4th DCA 1974).
Appellant's next contention is that the dealer franchise agreement between South Bay and GMC gave GMC the right to control South Bay's methods of operation to such an extent that a jury question was presented as to whether South Bay was an agent of GMC or an independent contractor. The test for determining whether a dealer is an agent or independent contractor was stated in Cawthon v. Phillips Petroleum Company, 124 So.2d 517, 519 (Fla. 2d DCA 1960), as follows:
Where the employee is merely subject to the control or direction of the employer as to the result to be procured, he is an independent contractor; if the employee is subject to the control of the employer as to the means to be used, then he is not an independent contractor.
The thirty (30) page dealer franchise agreement, entitled "GMC Standard Truck Dealer Sales and Service Agreement," specifically states that South Bay is an independent contractor "solely responsible for any and all expenditures, obligations and responsibilities made, incurred or assumed by Dealer in preparation or performance of Dealer's obligations and responsibilities under this agreement."
Appellant contends, however, that notwithstanding this provision, the franchise agreement gave GMC sufficient control over South Bay's day-to-day operations so as to create an ambiguity in the franchise agreement on the question of control, thus requiring submission of the agency issue to the jury. In support of this contention, appellant lists provisions in the agreement which required South Bay to: 1) obtain GMC's approval of the location and design of the dealership premises; 2) remain open for business during days and hours which are customary for such businesses in the community and display on the dealership premises advertising signs of a type recommended by GMC; 3) follow a uniform system of accounting specified by GMC and make its records available for inspection by GMC at reasonable times; 4) establish a minimum owned net working capital prescribed by GMC and meet standards set by GMC as to sales and customer service; 5) maintain a parts department and a customer service department; 6) provide service for trucks sold by GMC dealers, including warranty service paid for by GMC; 7) obtain needed service training for members of its service department provided by GMC; 8) refrain from engaging in fraudulent conduct in its dealings with the public.
Although the above provisions of the dealer franchise agreement do confer on GMC the right to control aspects of South Bay's business, the question of control for agency purposes must be determined by examining all of the rights and duties of the parties under the agreement. Of greatest importance are those rights and duties of the parties which bear most directly and significantly on the right to control the day-to-day operation of South Bay's business.
It should first be noted that South Bay is independently owned. GMC owns none of South Bay's stock, nor does GMC share in South Bay's profits and losses. The owners of South Bay are required to invest a substantial sum of money in order to obtain *43 and keep the dealership. From the ownership standpoint, therefore, South Bay is an independent and separate enterprise from GMC. Independent ownership of a substantial enterprise is an important factor to be considered on the issue of control. An independent owner is less likely to submit to the control of others in the operation of its business than a non-owner.
In addition to being independently owned, South Bay is not regulated by the subject agreement in the hiring, firing or supervising of its employees. South Bay exclusively determines these matters, as well as the wages and other employee benefits provided to its employees. When it buys trucks, parts and accessories from GMC, South Bay obtains title to them and resells them at prices determined by negotiation with its customers. Sales, use or similar taxes on resales of trucks, parts and accessories are the sole responsibility of South Bay. The agreement also recognizes that South Bay has the ultimate responsibility for the successful operation of the dealership.
A consideration of all of the provisions of the dealer franchise agreement between GMC and South Bay compels the conclusion that, as a matter of law, the method or mode of operation of South Bay's business on a day-to-day basis is controlled by South Bay as an independent contractor. South Bay, therefore, is not an agent of GMC under the dealer franchise agreement of the parties. This same conclusion has been reached by other courts throughout the country which have construed similar dealer franchise agreements. See, e.g., Arnson v. General Motors Corp., 377 F. Supp. 209 (N.D.Ohio 1974); Quijado Corp. v. General Motors Corp., 253 A.2d 538 (D.C. Ct.App. 1969); American Motors Sales Corp. v. The Superior Court, 16 Ariz. App. 494, 494 P.2d 394 (1972); Stansifer v. Chrysler Motors Corp., 487 F.2d 59 (9th Cir.1973); Washington v. Courtesy Motor Sales, Inc., 48 Ill. App.2d 380, 199 N.E.2d 263 (1964); Smith v. Ford Motor Co., 327 S.W.2d 535 (Mo. App. 1959); Westerdale v. Kaiser-Frazer Corp., 6 N.J. 571, 80 A.2d 91 (1951). See also, Paige-Detroit Motor Car Co. v. Pintado, 82 Fla. 210, 89 So. 549 (1921); Drum v. Pure Oil Co., 184 So.2d 196 (Fla. 4th DCA 1966); Cawthon v. Phillips Petroleum Co., supra.
The case of Drexel v. Union Prescription Center, Inc., 582 F.2d 781 (3rd Cir.1978), cited by appellant, is distinguishable from the present case. In Drexel, the franchise agreement was subject to the reasonable construction that the supplier reserved the right to control the specific way in which the dealer conducted its day-to-day business.
Appellant's final contention is that even if the trial court was correct on the issue of actual agency, the trial court nonetheless erred in granting GMC's motion for summary judgment on her claim that South Bay was the apparent agent of GMC, and that GMC was consequently estopped to deny the agency. The doctrine of apparent agency is well stated in the case of Sapp v. City of Tallahassee, 348 So.2d 363, 367 (Fla. 1st DCA 1977), in the following words:
[I]f the principal has held the agent out to the public as being possessed of the requisite authority, and a third person is aware of his authority and has relied on it to his detriment, then the principal is estopped from denying the agent relationship.
Appellant cites four facts which, she asserts, create a question of fact for the jury on the issue of apparent agency:
1. GMC signs were displayed by South Bay;
2. A GMC truck manual with GMC trademarks was given to Evelio Ortega Grillo's employer upon purchase of the truck;
3. A vehicle invoice with a GMC truck trademark was also given to the employer; and
4. The 9500 Series dump truck purchased by the employer displayed a GMC truck trademark.
These facts, however, are insufficient to create a jury question on the issue of apparent agency.
*44 The fact that South Bay displayed signs advertising that it sold GMC trucks, parts, and accessories, does not lead to the inference that South Bay was an agent of GMC. In Cawthon v. Phillips Petroleum Co., supra, the court held that the maintenance of signs on a dealer's service station advertising an oil company's products did not tend to show that the operator of the station was an employee of the oil company instead of an independent contractor. This holding applies with equal force to the situation involved in the present case.
Moreover, the facts that a GMC manual was supplied by South Bay to the purchaser of the truck in question and that GMC trademarks were displayed on the truck and on the invoice given to the purchaser cannot reasonably be said to convey the idea that South Bay was an agent of GMC instead of an independent contractor. Therefore, appellant's contention that the trial court erred in granting a summary judgment in favor of GMC on the issue of apparent agency is without merit.
Since we hold that the trial court was correct in granting GMC's motion for summary judgment on the issues of actual and apparent agency, it is unnecessary to consider GMC's contention that the release given by appellant to South Bay barred appellant's claim that GMC was vicariously liable for South Bay's negligence. For the foregoing reasons, the order granting summary judgment is affirmed.
AFFIRMED.
HERSEY and GLICKSTEIN, JJ., concur.